2000 UT 63

Andrew W. STAVROS, Bret S. Hayman, and Mark J. Morrise, Petitioners,

v.

OFFICE OF LEGISLATIVE RESEARCH AND GENERAL COUNSEL and Olene Walker, Lieutenant Governor, Respondents.

In re Petition of Nuchanaad Martin, Frank O. Nishiguchi, Jordan Tanner, and Utahns for a Common Language.

Nos. 20000656, 20000657.

Supreme Court of Utah.

Aug. 10, 2000.

Janet I. Jenson, Andrew W. Stavros, Salt Lake City, for petitioners in No. 20000656.

M. Gay Taylor, Robert H. Rees, Salt Lake City, for Office of Legislative Research and General Counsel.

Olene S. Walker, pro se.

Lisa Watts Baskin, Salt Lake City, for petitioners in No. 20000657.

WILKINS, Justice:

¶1 Petitioners challenge the wording of ballot titles prepared by the Office of Legislative Research and General Counsel pursuant to section 20A–7–209 of the Utah Code. Petitioners Martin, Nishiguchi, Tanner, and Utahns for a Common Language challenge the ballot title submitted for Initiative A (the Initiative A Petitioners) and petitioners Stavros, Hayman, and Morrise challenge the ballot title submitted for Initiative B (the Initiative B Petitioners). Because the underlying legal questions are the same in both instances, we initially treat the challenges to the two ballot titles together.

¶2 Provisions relating to the individual ballot titles and the underlying initiatives will be discussed below as we treat the specifics relating to each. First, however, we assess the role of this court in review of the ballot titles prepared and submitted by the Office of Legislative Research and General Counsel (LRGC) and the standards applied to that review.

¶3 Our review of these proposed ballot titles is controlled by Utah Code Ann. § 20A–7–209 (1999). We have not previously had the occasion to address the requirements of section –209. Title 20A is the election code. Chapter 7, within which section –209 falls, is that chapter dealing with "Issues Submitted to the Voters" and includes provi-

sions related to statewide initiatives in Part 2. The Initiative A Petitioners and the Initiative B Petitioners both collected the necessary signatures, *see* Utah Code Ann. § 20A–7–201 (1999), and submitted the initiative petitions to the lieutenant governor for placement on the general election ballot. The lieutenant governor, pursuant to the requirements of section 20A–7–209(1), delivered a copy of the two initiatives to LRGC. The statutory scheme enacted by the legislature provides short time periods for the sequence of steps taken in putting the initiatives on the general election ballot. *See id.* § 20A–7–209. Of interest to our review here is the requirement that the lieutenant governor deliver the initiatives to LRGC by July 6, following which LRGC prepares a ballot title for each initiative and returns it to the lieutenant governor by July 20. *See id.* § 20A–7–209(1), (2)(a)(ii).

¶ 4 Upon receipt of the ballot title from LRGC, the lieutenant governor is required to mail a copy of the ballot title to the sponsors of the initiative petition by July 21. *See id.* § 20A–7–209(3). Under certain circumstances, the sponsors of the initiative petition may appeal to this court the wording of the ballot title prepared by LRGC. *See id.* § 20A–7–209(4)(a). Any appeal must be filed by July 30. *See id.* This court is then required to examine the ballot title, hear arguments, and certify to the lieutenant governor by August 10 "a ballot title for the measure that fulfills the intent of [section 20A–7–209]." *Id.* § 20A–7–209(4)(b).

¶ 5 At issue in these two challenges is the standard we are to apply in our review of the ballot titles prepared by LRGC, and whether those ballot titles proposed by LRGC for Initiative A and Initiative B fulfill the intent of section –209.

## STANDARD OF REVIEW

¶ 6 Section 20A–7–209(2) sets the standard for LRGC in discharging its duty to prepare ballot titles. It provides:

(2) (a) The Office of Legislative Research and General Counsel shall:

(i) prepare a ballot title for each initiative; and

(ii) return each petition and ballot title to the lieutenant governor by July 20.

(b) The ballot title may be distinct from the title of the proposed law attached to the initiative petition, and shall express, in not more than 100 words, the purpose of the measure.

(c) The ballot title and the number of the measure as determined by the Office of Legislative Research and General Counsel shall be printed on the official ballot.

(d) In preparing ballot titles, the Office of Legislative Research and General Counsel shall, to the best of its ability, give a true and impartial statement of the purpose of the measure.

(e) The ballot title may not intentionally be an argument, or likely to create prejudice, for or against the measure.

Utah Code Ann. § 20A–7–209(2) (1999).

¶ 7 To correctly understand the burden on petitioners and this court in reviewing the ballot titles prepared by LRGC, we must first have a clear understanding of the duty imposed on LRGC by section –209(2). Some requirements are more easily understood than others. Clearly, LRGC has a short time frame within which to prepare and present the ballot titles to the lieutenant governor. From no later than July 6 until July 20, LRGC must prepare ballot titles for all initiatives submitted to it by the lieutenant governor. *See id.* § 20A–7–209(1)–(2)(a). The ballot title may not exceed 100 words in length. *See id.* § 20A–7–209(2)(b). In addition, the ballot title prepared by LRGC need not be the same as the title given the proposed law by the sponsors of the initiative. *See id.* These requirements are objectively easy to discern and have been met by LRGC with respect to each of the initiatives we have been asked to review here.

¶ 8 However, the mandate of subsections (d) and (e) is more difficult to measure. Subsection (d) obligates LRGC to "give a true and impartial statement of the purpose of the measure" and to do so "to the best of its ability." *Id.* § 20A–7–209(2)(d). Subsection (e) provides that the ballot title "may not intentionally be an argument, or likely to

create prejudice, for or against the measure."
*Id.* § 20A–7–209(2)(e).

¶ 9 In defending the ballot titles at issue here, LRGC argues that the language of subsections (d) and (e) limits the scope of review by this court to questions of whether LRGC has acted "to the best of its ability" and without "intentionally" presenting an argumentative or prejudicial ballot title for the initiatives. LRGC asserts that, absent proof by petitioners of a breach of these standards by LRGC, the court is obligated to accept their efforts and the proffered ballot titles. Consistent with this position, LRGC presents the uncontested affidavit of Richard V. Strong, the director of the Office of Legislative Research and General Counsel, attesting to the best efforts of LRGC and the absence of any intention to produce ballot titles for these initiatives that are either argumentative or likely to create prejudice for or against either initiative.

¶ 10 In arguing against the scope of review asserted by LRGC, petitioners point to the near impossibility of producing proof of less than best efforts, or intent on the part of LRGC to produce an argumentative or prejudicial ballot title. They correctly note that under the current statutory mechanism, the lieutenant governor is obligated to mail a copy of the proposed ballot title to the initiative sponsors on July 21, and any petition for review in this court must be filed no later than July 30. *See id.* § 20A–7–209(3), (4)(a). This brief period allows no opportunity for any meaningful investigation or discovery by challengers. Moreover, this court would be unable to extend the time petitioners may require to adduce any such evidence regarding the efforts or intent of LRGC, because of the requirement that we review the ballot titles, hear arguments, and certify to the lieutenant governor a sufficient ballot title by August 10. *See id.* § 20A–7–209(4)(b)(iii). Unless LRGC openly admits a failure to use its best efforts, or an intent to present an argumentative or prejudicial title, petitioners will always be precluded from successful challenge of a ballot title under the standard urged by LRGC.

¶ 11 We do not believe that the legislature intended to impose any such burden on citizens wishing to place an initiative before the voters. Read in harmony with the other provisions of 20A–7–209, subsection (2) is clearly intended as direction to the Office of Legislative Research and General Counsel. The standard to be applied by this court in review of a challenged ballot title is instead found in subsection (4), which provides in pertinent part:

(4) (a) If the ballot title furnished by the Office of Legislative Research and General Counsel is unsatisfactory or does not comply with the requirements of this section, at least three of the sponsors of the petition may, by July 30, appeal the wording of the ballot title prepared by the Office of Legislative Research and General Counsel to the Supreme Court.

(b) The Supreme Court shall:

(i) examine the ballot title;

(ii) hear arguments; and

(iii) by August 10, certify to the lieutenant governor a ballot title for the measure that fulfills the intent of this section.

*Id.* § 20A–7–209(4).

¶ 12 Under subsection (4)(a), three or more of the sponsors of an initiative may appeal the wording of the ballot title to this court if they can, in good faith as required by the rules of practice before this court,[1] allege that the ballot title is either unsatisfactory or does not comply with the requirements of section 20A–7–209. Those requirements are:

1. that the ballot title give a true and impartial statement of the purpose of the measure;

2. that the ballot title not exceed 100 words in length; and

3. that the ballot title be submitted by LRGC to the lieutenant governor not later than July 20.

¶ 13 LRGC is obligated to seek accomplishment of these requirements to the best of its ability, and to avoid intentionally creating a title that can be seen as an argument for or against the initiative, or that is likely

---

1. *See* Utah R. Civ. P. 11.

to create prejudice for or against the measure. These provisions, however, are not separate requirements subject to our review. They are instructions by the legislature to its own staff regarding the approach they are to take in meeting the requirements of the law.

¶ 14 Our review on appeal, then, is focused on the length and timeliness of ballot titles and on an objective evaluation of whether the proposed title gives a true and impartial statement of the purpose of the proposed initiative. Were we to be presented with an admission by LRGC of lack of best efforts, or of an intent on its part to present an argument or create prejudice for or against a measure, that admission would be considered as part of our review of whether the proposed ballot title presents a true and impartial statement of the intent of the measure. However, unless the LRGC's failure to use its best efforts or intent to present a non-neutral ballot title resulted in an actual failure to produce a true and impartial statement of the intent of the measure, it would be of no consequence.

¶ 15 Having described the nature of our review of the ballot titles prepared by LRGC, we now consider the particular ballot titles before us on appeal.

## INITIATIVE A

¶ 16 We begin our review by considering the ballot title prepared by LRGC. Unless that proposed ballot title fails in some material way to meet the requirements of section –209, as described above, our review ends there as well. The ballot title submitted by LRGC for Initiative A provides:

Initiative A

Shall a law be enacted to:

(1) declare English to be the official language of Utah;

(2) make English the sole language of government and require all official state and local government documents and actions to be in English, with specified exceptions;

(3) require the State Board of Education and the State Board of Regents to make rules for the public and higher education systems that assist non-

English speaking persons to learn English and that encourage foreign language instruction; and

(4) require an accounting of any state funds affected by implementation of this proposed law?

¶ 17 The Initiative A Petitioners concede on appeal that the ballot title as proposed by LRGC both was timely and met the 100–word maximum of the statute. However, they claim that the language chosen by LRGC to describe the initiative is unsatisfactory and does not comply with the requirements of section 20A–7–209 in that it fails to present a true and impartial statement of the purpose of the measure. Specifically, the Initiative A Petitioners assert that the ballot title does not include sufficient description of the limitations on the imposition of English as the official language of state and local government acts and documents, and that in doing so casts the initiative in an inaccurate light as being overly broad, vague, and unworkable. The Initiative A Petitioners believe that a ballot title without a sufficient description of the limitations will leave voters with a more negative impression of the initiative than a true and impartial statement would. In an attempt to alleviate their concerns, the Initiative A Petitioners supplied alternative language for the ballot title to LRGC and attached it to their petition on appeal.

¶ 18 In reviewing whether the proposed ballot title supplied by LRGC presents a true and impartial statement of the purpose of the initiative, we must discern the purpose of the initiative. The purpose of an initiative must be drawn from the language of the proposed measure itself. However, the purpose as described by the sponsors of the initiative is a helpful beginning point. Of course, if that expression of purpose by the sponsors is at odds with the language of the initiative itself it will be accorded no weight.

¶ 19 The purpose of a citizen initiative is to present to the voters a measure the legislative branch of government has not enacted, and may have specifically rejected, as in these cases. The legislature has instructed LRGC to seek, to the best of its ability, to

avoid a ballot title that is other than fair and impartial. Beginning with the purpose stated by the sponsors, and carefully comparing that with the actual language of the initiative should in most circumstances accurately identify the "purpose" of the initiative.

¶ 20 In the case of Initiative A, the sponsors described the purpose of Initiative A to be to declare English to be the official language for the conduct of government business in Utah. This is different from subsection (1) of the LRGC ballot title, which proclaims that the purpose of the initiative is to "declare English to be the official language of Utah." The LRGC language is also much broader than the text of the initiative itself. However, the text of the initiative is consistent with the purpose as described by the sponsors.

¶ 21 Further comparing the substance of the proposed initiative with the LRGC ballot title, there are other material deficiencies. For example, subsection (2) of the LRGC proposal describes English as the sole language of government and requires all government actions and documents to be in English "with specified exceptions." The sponsors raise concerns that the breadth of this description will mislead voters into thinking that a variety of government actions and documents now required by law to be made available in languages in addition to English will be prohibited. The Initiative A Petitioners point specifically to exceptions for foreign language translation of actions and documents required by the federal and state constitutions, by federal law and regulations, by public safety and health concerns, in the conduct of state public and higher education, in certain judicial proceedings, as they may relate to economic development and tourism activities targeting non-English speakers, and regarding the collections of public libraries.

 ¶ 22 We are persuaded by the arguments of the Initiative A Petitioners that these deficiencies in the ballot title prepared by LRGC prevent it from being a true and impartial statement of the purpose of Initiative A. We accept the representation that the staff of the Office of Legislative Research and General Counsel has made its best effort

and has not intentionally sought to present a less than adequate ballot title for Initiative A. Additionally, we are well aware that our task on review is not to substitute our editorial judgment for that of LRGC in the preparation of ballot titles. However, when the sponsors of an initiative petition are able to persuade us that the language chosen by LRGC fails in some material aspect to present a true and impartial statement of the purpose of the initiative, our duty under the statute is to remedy that failure and to certify sufficient language to the lieutenant governor by August 10.

¶ 23 With that obligation in mind, we certify the ballot title appended to this opinion as Appendix A to the lieutenant governor as fulfilling the intent of section 20A–7–209.

## INITIATIVE B

 ¶ 24 We next consider the ballot title prepared by LRGC for Initiative B and the charges by the Initiative B Petitioners that the ballot title is materially defective. The ballot title submitted by LRGC to the lieutenant governor reads as follows:

**Initiative B**

Shall a law be enacted to:

(1) change provisions relating to the forfeiture of property involved in the commission of any of the crimes specified in the Initiative:

(a) to give additional protection to persons whose property is sought to be forfeited, including persons accused of any of the specified crimes;

(b) to impose additional limitations and requirements on the forfeiture of property; and

(c) to change how the proceeds of forfeited property are distributed; and

(2) narrow the class of racketeering defendants subject to an alternative fine and reduce the maximum allowable amount of that fine?

¶ 25 The Initiative B Petitioners concede that the ballot title was timely and falls within the 100–word limit. However, they raise a number of objections to the language of the ballot title as proposed by LRGC.

Foremost is their concern that the primary purpose of the initiative measure, as they conceive of it, has not been included at all. They consider the primary purpose of the measure to be to add protections for innocent property owners from the seizure and sale of their property by law enforcement agencies resulting from the alleged use of that property in the commission of a crime. The Initiative B Petitioners also believe that the text of the measure makes clear that a significant secondary purpose of the measure is the redirection of net funds received from the disposal of properly seized property to the state Uniform School Fund, from law enforcement accounts, to remove the incentive that currently exists for law enforcement to seize and sell property. They argue that neither of these can be found within the ballot title prepared by LRGC.

¶ 26 Our review of the text of the initiative is consistent with this expression by the Initiative B Petitioners. The ballot title supplied by LRGC does not convey these central elements of the purpose of the measure as expressed in the language of the initiative itself. Moreover, the LRGC proposed title includes accurate but misleading detailed elements of the measure. Included in this category is the phrase in subsection (1)(a) "including persons accused of any of the specified crimes" to indicate that the extra protections for innocent owners intended by the proponents of the measure would apply with equal force to persons charged with crimes. However, as the Initiative B Petitioners point out in their petition and argument before this court, persons charged with crimes already enjoy most of these protections. It is the persons not parties to the criminal activity who own property somehow entangled in the criminal events who are the intended beneficiaries of the measure's additional procedural and other protections. By placing this phrase in the ballot title, LRGC has given it undue emphasis, when considered with the other parts of the brief description of the measure. That amount of emphasis is misleading to the average reader, and therefore materially interferes with the presentation of a true and impartial statement of the purposes of the measure.

¶ 27 Similarly, the inclusion of subsection (2) of the ballot title, focused entirely on a description of the impact of the initiative on so-called racketeering law, suggests that modification and reduction of the penalty for persons convicted of racketeering is a major thrust of the measure, and equal in significance to the modification of the method and use of proceeds arising from the forfeiture of property owned by innocent persons. The inclusion of this description in the ballot title, while arguably accurate as a description of one secondary impact of accepting the proposed initiative, is materially misleading in its wording and organization as the second of only two subsections describing the purpose of the measure.

¶ 28 Consequently, we are persuaded that the ballot title prepared by LRGC and submitted to the lieutenant governor is not a true and impartial statement of the purpose of Initiative B. Given the complexity and length of Initiative B, it is impossible to prepare a ballot title that accords with the 100–word limit imposed by the provisions of section –209 that contains much detail. The ballot title must, then, direct the voter to the main and dominant purpose of the measure, and anticipate that in exercising the vital opportunity to vote on the adoption of the measure, voters will be aided by the information included in the Voter Information Pamphlet supplied by the lieutenant governor, the text of the initiative itself, and the ebb and flow of public debate and media coverage. The ballot title cannot sustain the entire burden of informing the voters. But it must not emphasize some provisions that may be of concern to some voters, while failing to mention others that are of equal significance and perhaps of greater importance. With these concepts in mind, we certify to the lieutenant governor the language appended to this opinion as Appendix B as fulfilling the intent of section 20A–7–209 to present a true and impartial statement of the purpose of Initiative B.

## CONCLUSION

¶ 29 Three or more sponsors of a ballot initiative may appeal the ballot title presented by the Office of Legislative Re-

search and General Counsel if, in good faith, they believe that the ballot title is unsatisfactory or fails to comply with the requirements of section −209, in that it does not present a true and impartial statement of the purpose of the ballot initiative. On appeal, we will consider the length, timeliness, and wording of the ballot title. The title must present a true and impartial statement of the purpose of the measure. If upon review we are convinced that the measure fails to meet any one or more of these requirements, we are obligated by section −209(4)(b) to certify to the lieutenant governor a ballot title that meets these requirements.

¶ 30 The ballot titles presented for Initiative A and Initiative B both comply with the 100−word limit and were timely. However, each fails to present a true and impartial statement of the purpose of the measure it describes. Consequently, we have certified to the lieutenant governor the ballot titles attached to this opinion as Appendixes A and B as meeting the requirements of the section.

¶ 31 Associate Chief Justice RUSSON, Justice DURHAM, and Justice DURRANT concur in Justice WILKINS' opinion.

HOWE, Chief Justice, dissenting:

¶ 32 I dissent. I would adopt the ballot titles formulated by the Office of Legislative Research and General Counsel (LRGC) with amendments made by us to accommodate certain of the concerns of the sponsors (petitioners).

¶ 33 My interpretation of section 20A−7−209 is that the primary responsibility to formulate ballot titles has been placed by the legislature with LRGC because of the expertise of that office in preparing legislation generally. Thus, when ballot titles are challenged in this court, we should grant a measure of deference to the work and experience of the LRGC. In this instance, a team composed of members of that office devoted considerable time to produce ballot titles that they deemed were a true and impartial statement of the purpose of the initiatives. That work should not be lightly dismissed by this court and our own titles substituted therefor.

¶ 34 Both of the initiatives before us have a number of purposes. There is no one correct and complete way to express the most important of those purposes. Therefore, I would grant LRGC some deference as to its judgment on what purposes should be included in the ballot titles. Any corrections or additions we deem necessary should be made from the draft composed by LRGC.

## Appendix A

**Initiative A**

Shall a law be enacted to:

(1) declare English Utah's official and sole language for state and local government documents and action;

(2) exempt those documents and actions required by the United States and Utah constitutions; federal law and regulations; law enforcement, public safety, and health requirements; public and higher education; certain judicial proceedings; economic development and tourism; and libraries;

(3) require public and higher education to enact rules to promote learning and using English and encourage learning foreign language; and

(4) return to the General Fund monies appropriated or designated for services in another language, and require accounting?

[95 words]

## Appendix B

**Initiative B**

Shall Utah law be amended to:

(1) forbid forfeiture (seizure and sale) of property involved in crime where an innocent owner neither knew of nor consented to the crime;

(2) create uniform procedures to protect property owners where forfeiture is sought by the government;

(3) require the government to prove property is subject to forfeiture, and to reimburse owners for damage to property in custody;

(4) require distribution of forfeiture proceeds, after deductions for court costs

and victim losses, to schools instead of counties or the state;

(5) clarify valuation methods for forfeited property, and require tracking and reporting of all money from its sale?

[100 words]