*This opinion is subject to revision before*
*publication in the Pacific Reporter*

**2013 UT 57**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

WAYNE BURR; ELAINE ANDELIN;
and PETER ANDERSON,
*Petitioners,*

*v.*

CITY OF OREM,
*Respondent.*

No. 20120982
Filed August 30, 2013

Wayne Burr, Elaine Andelin, Peter L. Anderson, Orem,
for petitioners

Greg W. Stephens, Heather J. Schriever, Orem,
for respondent

ASSOCIATE CHIEF JUSTICE NEHRING authored the opinion of the
Court, in which CHIEF JUSTICE DURRANT, JUSTICE DURHAM,
JUSTICE PARRISH, and JUSTICE LEE joined.

ASSOCIATE CHIEF JUSTICE NEHRING, opinion of the Court:

## INTRODUCTION

¶ 1   Via a referendum petition, Petitioners obtained sufficient signatures to challenge a proposed tax increase approved by the Orem City Council in Resolution 2012-0014.   The measure will now go before the voters of Orem City in the November 2013 election.  Petitioners challenge the Orem City Attorney's proposed language that will appear as the referendum ballot title.   We disagree with Petitioners' objections to the wording of the ballot title, having found that the drafter did not abuse his discretion.

## BACKGROUND

¶ 2   On May 8, 2012, the Orem City Council received the tentative budget for fiscal year 2012–13. At that same meeting, the City Manager "recommended [that] the City Council consider a property tax increase for operations" in order to meet the revenue

necessary for the proposed budget. According to the City Council meeting minutes, the proposed budget "was formulated with [national and local economies] in mind [and] it recognizes . . . the continued pressure of the UTOPIA debt guarantee obligation combined with the rising costs of operational expenditures."

¶ 3 UTOPIA is a city-owned telecommunications network that is building a wholesale fiber-optic network that offers users access to high-speed video, data, and phone services. Eleven Utah cities are members of UTOPIA, and each city has pledged a portion of its sales tax revenue as security guarantee for the UTOPIA bond obligation. UTOPIA has not achieved its projected goals and now finds itself in a weak financial position. As a result of the security guarantees, the member cities are obligated to pay the deficit for UTOPIA—the UTOPIA debt guarantee obligation. The UTOPIA debt guarantee obligation for Orem City for 2012-13 is approximately $2.8 million of the city's $88 million budget.

¶ 4 Because the proposed tax increase exceeded Orem City's certified tax rate,[1] the City Council was required to hold various public hearings in order to adopt the tax increase, pursuant to Utah Code section 59-2-919. According to the minutes of the public hearings, the item to be discussed at each of the meetings was

> Budget Issue #8 — General Fund, UTOPIA, and Capital Improvement Needs
>
> • Should the City increase the certified tax rate sufficient to increase General Fund property tax revenues by $3,000,000 to address the UTOPIA obligation (principally) and other General Fund requirements as well as approximately $350,000 for tort liabilities?

At those meetings, the City Council received input from the public, which included significant opposition to both the tax increase and UTOPIA generally from several Orem City residents.

---

[1] "The 'certified tax rate' means a tax rate that will provide the same ad valorem property tax revenues for a taxing entity as were budgeted by that taxing entity for the prior year." UTAH CODE § 59-2-924(3)(a).

At the public hearings, City Council members clarified to residents that the UTOPIA debt obligation exists independent of the tax increase, and failure to approve the tax increase would not eliminate the financial obligation of Orem City for the UTOPIA obligation.

¶ 5 Ultimately, the City Council decided to approve the tax increase, but in an amount smaller than what was originally proposed. On August 15, 2012, the Orem City Council passed Resolution No. R-2012-0014 (Resolution), which served to (1) increase Orem's property tax revenues by $1,700,000 per year and (2) adopt a budget for fiscal year 2012-13. Unhappy with the property tax increase, Petitioners timely filed a Referendum Petition Application challenging Section 1 of the Resolution relating to the property tax rate and levy. Petitioners acquired the required number of signatures for the Referendum Petition, and on October 18, 2012, the City Recorder declared the Referendum Petition to be sufficient to go to a vote pursuant to Utah Code section 20A-7-607(2)(b). On November 2, 2012, the City Attorney filed a proposed ballot title with the City Recorder pursuant to Utah Code section 20A-7-608(2)(c) and provided notice of the proposed ballot title to the City Council and the referendum sponsors pursuant to Utah Code section 20A-7-608(2)(d). On November 12, 2012, the City Attorney filed a final ballot title with the City Recorder pursuant to Utah Code section 20A-7-608(4)(b). Dissatisfied with the City Attorney's chosen language, Petitioners filed a Petition for Extraordinary Relief pursuant to Utah Code section 20A-7-608(6), challenging the wording of the ballot title.

¶ 6 We have jurisdiction pursuant to Utah Code section 20A-7-608(6).[2]

---

[2] *See Walker v. Weber Cnty.*, 973 P.2d 927, 928 (Utah 1998) ("That section, which pertains to initiative measures in general, specifically gives this court jurisdiction to review initiative ballot titles and correct them.").

**STANDARD OF REVIEW**

¶ 7   Utah Code section 20A-7-608(6) sets forth the scope of our review of referendum ballot titles in the face of a challenge.   It reads:

> (a) If the ballot title furnished by the local attorney is unsatisfactory or does not comply with the requirements of this section, the decision of the local attorney may be appealed by a petition to the Supreme Court that is brought by:
>
>> (i)   at least three sponsors of the referendum petition; or
>>
>> (ii) a majority of the local legislative body for the jurisdiction where the referendum petition was circulated.
>
> (b) The Supreme Court shall examine the measures and consider arguments, and, in its decision, may certify to the local clerk a ballot title for the measure that fulfills the intent of this section.

The operative question posed by the language of the statute is whether the ballot title "is unsatisfactory or does not comply with the requirements of this section."   In order to give meaning to this standard, we look to the requirements of the section in drafting the ballot title.   Section 608(3) reads:

> (a)   The ballot title may be distinct from the title of the law that is the subject of the petition, and shall express, in not exceeding 100 words, the purpose of the measure.
>
> (b)   In preparing a ballot title, the local attorney shall, to the best of his ability, give a true and impartial statement of the purpose of the measure.
>
> (c)   The ballot title may not intentionally be an argument, or likely to create prejudice, for or against the measure.

We had occasion to interpret this language in *Stavros v. Office of Legislative Research & General Counsel*.[3] Specifically, we grappled with how to interpret language directing the drafters to use "the best of [their] ability" in drafting and to "not intentionally" create an argument for or against the measure.[4] We held that "[t]hese provisions . . . are not separate requirements subject to our review. They are instructions by the legislature to [the drafters] regarding the approach they are to take in meeting the requirements of the law."[5] Thus, we held that our review of a ballot title challenge encompasses three requirements: "1. that the ballot title give a true and impartial statement of the purpose of the measure; 2. that the ballot title not exceed 100 words in length; and 3. that the ballot title be submitted by [the stated deadline]."[6]

¶ 8 Having defined the scope of our review, we now address the level of deference we afford the drafter of the ballot title in conducting our review based on these three requirements. While

---

[3] 2000 UT 63, 15 P.3d 1013. While the statute at issue in *Stavros*, Utah Code section 20A-7-209, has since been amended, the pertinent language was identical with the exception of the name of the drafter at the time *Stavros* was decided.

[4] *Id.* ¶¶ 8–13.

[5] *Id.* ¶ 13. We previously stated in dicta in *Walker v. Weber County* that "under [Section 608], the capabilities and intentions of the drafter of the ballot title are relevant to whether the result meets the statute's purposes." 973 P.2d 927, 930 (Utah 1998). We now repudiate that standard to the extent it conflicts with this decision. However, this is not to say that these subjective requirements are irrelevant. It is merely a recognition that petitioners face a difficult practical problem given limited discovery and the fact that the drafter is highly unlikely to admit to not drafting to the best of his or her ability or to the intentional creation of an argument. But in the event petitioners were able to present evidence of a failure to meet these subjective directives, such evidence would certainly be relevant in reviewing a ballot title to determine whether the drafters abused their discretion. *See Stavros*, 2000 UT 63, ¶ 14.

[6] *Stavros*, 2000 UT 63, ¶ 12.

we have never explicitly stated how much deference we accord the drafters of ballot titles, we have stated that "[w]e will not tamper with the wording of ballot initiatives where there is no compelling reason to do so."[7] We now take the opportunity to explain our deferential standard of review.

¶ 9 To begin with, we note that this review is unique in that we are not presented with a typical decision to review from a lower court or an agency. Instead, our job is to review the original writings of the City Attorney for statutory compliance. In creating the ballot title, the statute gives broad instructions as to content, requiring only that the product be "a true and impartial statement of the purpose of the measure" and not be an argument for or against the measure.[8] As a result, the City Attorney is allotted a wide range of permissible terminology and has broad discretion in his choice of wording. Indeed, there are numerous satisfactory alternatives from which the City Attorney must have chosen in arriving at the final product in this case. In deciding among the various alternatives, the City Attorney must draw on his experience, expertise, and familiarity with the measure. In reviewing the City Attorney's final product, it is not our task to determine whether he has chosen the best possible wording, but only whether the chosen wording meets the requirements of the statute. In other words, we may not substitute our "editorial judgment" for that of the drafter.[9] Therefore, we hold that in the creation of ballot titles, the drafter is entitled to considerable deference, and we will apply an abuse of discretion standard in conducting our review.[10]

---

[7] *Kendell v. N. Ogden City (In re N. Ogden Ballot Title)*, 2003 UT 42, ¶ 2, 84 P.3d 1134.

[8] UTAH CODE § 20A-7-608(3).

[9] *Stavros*, 2000 UT 63, ¶ 22.

[10] This standard of review applies only to ballot title statutes that do not otherwise set forth their own standard of review. *See, e.g.,* UTAH CODE § 20A-7-209(4)(b)(i) ("There is a presumption that the ballot title prepared by the Office of Legislative Research and

¶ 10 In contrast to the deference we afford to the content of the title, we owe no deference to the timing and word limit requirements of the statute as there is no discretion or expertise necessary to fulfilling those requirements.

**ANALYSIS**

¶ 11 The parties agree that the timing and word limit requirements were both met in this case. It is solely the content of the proposed title that is the subject of our review.

¶ 12 The City Attorney drafted the following language for the referendum ballot title:

> On August 15, 2012, the Orem City Council passed Resolution No. R-2012-0014, which adopted a budget for fiscal year 2012-13 and adjusted Orem's property tax to raise an additional $1,700,000 per year for municipal operations. The Orem property tax on a $187,000 residence would change from $192 to $242, which is $50 per year. The Orem property tax on a $187,000 business would change from $350 to $440, which is $90 per year. The property tax adjustment will take effect only if approved by voters.
>
> Are you for or against the property tax adjustment taking effect?[11]
>
> For ☐ Against ☐

¶ 13 Petitioners assert three challenges to use of this language: (1) the language fails to give a true and impartial statement of the purpose of the measure by failing to mention UTOPIA, (2) the title creates an argument for the measure by minimizing the perceived burden on businesses, and (3) the wording is otherwise "unsatisfactory" in that it seeks to hide from the voters the causal connection between the UTOPIA bond obligation and the requested tax rate increase. We address each challenge in turn.

---

General Counsel is an impartial summary of the contents of the initiative.").

[11] As requested by the City Attorney, and not objected to by the Petitioners, we have incorporated the 2013 property tax rate and valuation figures, which were previously unavailable at the time of drafting.

## I. THE PROPOSED BALLOT TITLE IS A TRUE AND IMPARTIAL STATEMENT OF THE PURPOSE OF THE MEASURE ABSENT MENTION OF UTOPIA

¶ 14 As a preliminary matter, we note that, given the 100-word limit imposed by the statute, it will oftentimes be difficult to prepare a ballot title that contains much detail, particularly in the case of lengthy measures. But voters need not rely solely on the ballot title in making their voting decision. "[I]n exercising the vital opportunity to vote on the adoption of the measure, voters will [also] be aided by the information included in the Voter Information Pamphlet . . . , the text of the [measure] itself, and the ebb and flow of public debate and media coverage."[12] Therefore, while the ballot title will rarely contain detail regarding every component of the measure, it must "direct the voter to the main and dominant purpose of the measure."[13]

¶ 15 In deciding whether the proposed ballot title presents a true and impartial statement of the purpose of the Resolution, we must first ascertain the purpose of the measure, here Section 1 of the Resolution. To do so, we look first to the language of the Resolution:

> Section 1. Property Tax Rate and Levy
>
> 1. For the purpose of defraying the necessary and proper expenses of the City of Orem, and for maintaining the government thereof, the City Council hereby levies a property tax sufficient to increase City of Orem property tax revenues by $1,700,000 per year. To achieve this revenue increase, the City Council hereby levies a total property tax rate of 0.002414 for Fiscal Year 2012-2013, levied on the taxable value of taxable property of the City of Orem.
>
> 2. Included in the property tax revenue increase and rate described above (but not in addition to said

---

[12] *Stavros v. Office of Legislative Research & Gen. Counsel*, 2000 UT 63, ¶ 28, 15 P.3d 1013.

[13] *Id.*

revenue increase and rate), the City Council hereby establishes and levies a property tax of .0001 per dollar of taxable value of taxable property (approximately $344,617 for Fiscal Year 2012-2013) for the purpose of (1) establishing and maintaining a reserve fund for the payment of claims, settlements or judgments, (2) defending and paying claims, settlements and judgments against the City, (3) paying insurance premiums, and (4) paying other expenditures as allowed by U.C.A. § 63G-7-704 and other applicable laws.

The stated purpose of Section 1 of the Resolution is to "defray[] the necessary and proper expenses of the City of Orem" and to "maintain[] the government thereof." The stated purpose does not mention UTOPIA, nor is UTOPIA mentioned anywhere in the Resolution. The Orem City Attorney's proposed language summarizes the purpose as "for municipal operations."

¶ 16 Petitioners take issue with the "for municipal operations" language. They allege that the real purpose of the tax increase is to pay the obligation on the UTOPIA debt guarantee. Indeed, based on the minutes of the various public hearings held on the matter, the City Council stated that the need for the tax increase was a result of the UTOPIA bond obligation. Respondents do not dispute that approximately $2.8 million of the City of Orem's $88 million budget will be paid toward the UTOPIA bond obligation. But where Petitioners' argument fails is that they have not shown that the language "for municipal operations" is either untrue or partial in some way. Even the language proposed by Petitioners does not eliminate the "for municipal operations" wording. Instead, it adds additional language, proposing "for municipal operations and for payment on the UTOPIA bond obligation."

¶ 17 In short, Petitioners argue that their proposed language would make the ballot title more true or more impartial. This is precisely the kind of substitution of judgment that our deferential standard of review does not permit. *Webster's Dictionary* defines "operations" as "the whole process of planning for and operating

a business or other organized unit."[14]   Given our deferential standard of review, we see nothing untrue or partial about the City Attorney's summarizing the proposed tax increase's purpose as "for municipal operations."   Therefore, we hold that the language "for municipal operations" satisfies the requirements of truth and impartiality absent mention of UTOPIA.

## II. THE TITLE DOES NOT CREATE AN ARGUMENT IN FAVOR OF THE MEASURE BY USE OF THE TRUTH-IN-TAXATION LANGUAGE[15]

¶ 18 Petitioners next argue that the City Attorney's use of the language mandated by the truth-in-taxation hearing creates an argument in favor of the measure by minimizing the impact of the proposed tax on businesses. For the purpose of our review, Petitioners argue, in essence, that the proposed language, while true, is not impartial. The proposed ballot language reads as follows:

> The Orem property tax on a $187,000 residence would change from $192 to $242, which is $50 per year. The Orem property tax on a $187,000 business would change from $350 to $440, which is $90 per year.

Again, we find nothing untrue or partial about the proposed wording.   While the ballot title does not say from where these

---

[14] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1581 (1961).

[15] Because the proposed tax increase exceeded Orem City's certified tax rate, the City Council was required to hold various public hearings and to present the impact of the proposed tax increase in a specific format, pursuant to Utah Code section 59-2-919.   That format required the taxing entity, Orem City, to state the impact of the tax increase on residences in a dollar amount using the "average value of a residence in the taxing entity" and to state the impact of the tax increase on businesses in a dollar amount using the "value of a business having the same value as the average value of a residence in the taxing entity." UTAH CODE § 59-2-919(6)(f)(i).   We refer to this language as the "truth-in-taxation" language.

figures originate (likely due to the word limit), $187,000 is the average value of a residential home in Orem City in 2013. For purposes of the truth-in-taxation hearing, the City Council was required to use this figure as an example of the impact of the proposed tax increase on both residences and businesses. Nowhere does it purport to represent the average value of a business, nor do Petitioners provide us with the data of what the average value of a business in the City of Orem was in 2013. What the language does is provide an "apples to apples" comparison of the proposed increase on residences compared to businesses, which accounts for the 45 percent exemption on the taxation of primary residences in the state of Utah. Again, while there are certainly multiple ways to depict the impact of the proposed increase, our job is not to determine whether the City Attorney utilized the best possible method of communicating the impact and we will not substitute our editorial judgment for that of the drafter. In sum, we conclude that the City Attorney did not abuse his discretion by including the truth-in-taxation language in the ballot title.

## III. THE "UNSATISFACTORY" LANGUAGE OF THE STATUTE DOES NOT PRESENT A SEPARATE BASIS FOR REVIEW OF THE BALLOT TITLE

¶ 19   Finally, Petitioners argue that the wording is otherwise "unsatisfactory" in that it seeks to hide from the voters the causal connection between the UTOPIA bond obligation and the requested tax rate increase. Petitioners take this argument from Utah Code section 20A-7-608(6)(a), which defines our review as whether the proposed language is "unsatisfactory or does not comply with the requirements of this section." Petitioners argue that inclusion of the word "unsatisfactory" dictates a separate standard of review, one distinct from strict compliance with the terms of the statute. We disagree. The terms "satisfactory" and "unsatisfactory" have no independent stand-alone requirements. They glean their contextual meaning from specific conditions or obligations; in this case, compliance with the terms of the statute. Given our determination above that the failure to include UTOPIA in the ballot title does not render the ballot title untrue or partial, we likewise hold that the failure to include an explanation of the causal connection between the UTOPIA bond obligation

and the requested tax rate increase also does not render the ballot title untrue or partial.

## CONCLUSION

¶ 20   We hold that the Orem City Attorney did not abuse his discretion in drafting the proposed ballot title, and that the proposed language satisfies the statutory direction that the title be a true and impartial statement of the purpose of the measure.

———————