*This opinion is subject to revision before final publication in the Pacific Reporter*

**2024 UT 45**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Appellee,*

*v.*

STEPHEN RIPPEY,
*Appellant.*

No. 20200917
Heard September 8, 2023
Filed December 27, 2024

On Direct Appeal

Third District Court, West Jordan
The Honorable L. Douglas Hogan
No. 081402174

Attorneys*:

Sean D. Reyes, Att'y Gen., William M. Hains, Asst. Solic. Gen., Salt Lake City, for appellee

Ann Marie Taliaferro, Dain Smoland, Salt Lake City, for appellant

CHIEF JUSTICE DURRANT authored the opinion of the Court, in which JUSTICE PETERSEN, JUSTICE HAGEN, JUSTICE POHLMAN, and JUDGE LUTHY joined.

Having recused himself, ASSOCIATE CHIEF JUSTICE PEARCE did not participate herein; COURT OF APPEALS JUDGE JOHN D. LUTHY sat.

---

* Additional attorneys: Benjamin Miller, Debra M. Nelson, Salt Lake City, for *amicus curiae* Utah Indigent Appellate Defense Division, in support of appellant; Dallas Young, Staci Visser, David Ferguson, Salt Lake City, for *amicus curiae* Utah Association of Criminal Defense Lawyers, in support of appellant.

CHIEF JUSTICE DURRANT, opinion of the Court:

**INTRODUCTION**

¶1    Stephen Rippey pled guilty to one count of aggravated sexual abuse of a child and one count of object rape of a child. He was sentenced to serve two prison terms of fifteen years to life, which were ordered to run concurrently. Ten years after his conviction, a district court reinstated Rippey's time to file a direct appeal. On appeal, Rippey challenges several aspects of his plea, conviction, and sentence. We recalled his appeal to address a threshold issue: whether the Plea Withdrawal Statute (PWS)[1] is constitutional.

¶2    In this opinion we reach solely that issue. We hold that subsection (2)(b)'s preservation rule and the corresponding waiver housed in subsection (2)(c) of the PWS violate the separation of powers required by the Utah Constitution. Because those provisions are unconstitutional, the PWS does not bar Rippey's challenge to his guilty plea and his appeal is now governed—as are similar challenges brought by other defendants—by our standard rules of preservation. Having resolved Rippey's constitutional challenge to the PWS, we instruct the parties to brief the merits of

---

[1] The Plea Withdrawal Statute reads:

(1) A plea of not guilty may be withdrawn at any time prior to conviction.

(2)(a) A plea of guilty or no contest may be withdrawn only upon leave of the court and a showing that it was not knowingly and voluntarily made.

(b) A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is announced. Sentence may not be announced unless the motion is denied. For a plea held in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest.

(c) Any challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under Title 78B, Chapter 9, Postconviction Remedies Act, and Rule 65C, Utah Rules of Civil Procedure.

UTAH CODE § 77-13-6.

Rippey's challenges to his plea, conviction, or sentence under the standards articulated in this opinion.

## BACKGROUND

¶3   The State charged Rippey with five first-degree felonies—three counts of aggravated sexual abuse of a child and two counts of object rape of a child—for acts that allegedly occurred between January 2005 and July 2008. Rippey pled guilty to one count of aggravated sexual abuse of a child and one count of object rape of a child. In exchange for his guilty plea, the State dismissed the other charges and amended the information to specify that the charged offenses occurred in December 2007.[2]

¶4   Before Rippey entered his plea, the court engaged in a colloquy with him. Rippey told the court that he had reviewed the plea statement with his counsel, and that he understood the rights he was giving up by pleading guilty. He also told the court that he could read and understand English, had not taken drugs or alcohol in the previous forty-eight hours, and was not aware of mental or physical impairments preventing him from understanding the ramifications of his guilty plea. Finally, Rippey told the court that he was "still willing to go forward" with the plea despite the possibility that he could spend the rest of his life in prison.

¶5   After this exchange, Rippey signed a plea form certifying that he believed he was "of sound and discerning mind"; "mentally capable of understanding the[] proceedings and the consequences of [the guilty] plea"; and "free of any mental disease, defect, or impairment that would prevent [him] from understanding what [he was] doing or from knowingly, intelligently, and voluntarily entering [his] plea." The plea form also described the requirements and limitations for withdrawing a guilty plea and explained that

---

[2] The change in timeframe was relevant because the statutory penalties for the charged offenses changed between July 2005 and July 2008, when the State initially alleged that the offenses had occurred. Notably, before May 2008, object rape of a child included a presumptive sentence of fifteen years to life, which could be reduced to ten or six years to life in the interests of justice. *See id.* § 76-5-402.3(2), (3) (2007). After May 2008, the legislature eliminated the sentencing presumption for the offense so that a defendant convicted of object rape of a child would receive twenty-five years to life with no chance for an interests-of-justice reduction. *See id.* (2008).

defendants could pursue post-sentence plea challenges only under the Post-Conviction Remedies Act (PCRA) and rule 65C of the Utah Rules of Civil Procedure.

¶6 Rippey's counsel then provided the district court with a factual basis for the guilty plea. Rippey attested to its accuracy and affirmed that he was, in fact, guilty of the offenses. The court accepted Rippey's plea and told him that if he wanted to withdraw the plea, he would "need to ask [the court] in writing sometime prior to [his] sentencing date." Rippey did not move to withdraw his plea before sentencing. He was sentenced to two concurrent prison terms of fifteen years to life.

¶7 Rippey did not appeal his conviction within the permitted timeframe. About a year after his sentencing, however, he filed a pro se petition for post-conviction relief under the PCRA and rule 65C. In the petition, Rippey listed seventeen claims for relief.

¶8 At the frivolity review stage,[3] the district court dismissed eight of Rippey's seventeen claims for relief. The State then moved to dismiss the remaining claims for failure to state a claim upon which relief could be granted, arguing that Rippey could have but did not challenge the validity of his plea before sentencing, that he entered his plea knowingly and voluntarily, and that he could not show that his trial counsel was constitutionally ineffective.

¶9 At a hearing on the State's motion to dismiss, Rippey, representing himself, asserted that his mental health records would demonstrate both that he was incompetent when he entered his guilty plea and that his trial counsel was ineffective. The State responded that because Rippey did not move to withdraw his guilty plea before sentencing, all his claims except ineffective assistance of counsel had been waived. And, the State added, Rippey could not show that his trial counsel performed ineffectively.

¶10 The court granted the State's motion to dismiss. In its written dismissal order, the court reasoned that Rippey's plea challenges were procedurally barred because they could have been but were not raised in the district court or on direct appeal. And it explained that Rippey's ineffective assistance of counsel claims, though not procedurally barred, were "without merit."

---

[3] *See* UTAH R. CIV. P. 65C(h)(1).

¶11 Over the course of the post-conviction proceedings, Rippey asked the court nearly ten times to appoint counsel for him. Rippey offered several reasons why he needed counsel's assistance: the legal issues were complex; without assistance of counsel, he would be deprived of meaningful access to the courts; and he lacked requisite legal resources. The State objected to Rippey's requests for counsel, contending that the legal and factual issues were "fairly straightforward and d[id] not require an evidentiary hearing," and that the counsel-appointment process would lead to needless delays.

¶12 The court denied Rippey's requests for the appointment of counsel, though it did "reserve[] the possibility that the need for counsel m[ight] become more apparent as the case proceed[ed] further." In the court's view, the appointment of counsel was not yet "necessary" under the PCRA because an evidentiary hearing would not likely be needed, and because Rippey's petition did not present "complicated issues of law or fact."[4]

¶13 Rippey appealed the post-conviction court's dismissal of his petition. At this point, the court appointed counsel to represent him. Regarding the challenges to the validity of his plea, Rippey argued to the court of appeals that because the PWS mandates that guilty plea challenges not raised in a motion to withdraw be raised under the PCRA, he had not waived his claims in post-conviction proceedings under the PCRA by failing to raise them on appeal.[5] And Rippey maintained that his ineffective assistance of counsel claims had merit.[6]

¶14 The court of appeals determined that Rippey's claims, other than ineffective assistance of counsel, were not preserved.[7] Accordingly, the court did not address the unpreserved claims on their merits.[8] And the court upheld the district court's dismissal of Rippey's ineffective assistance of counsel claims.[9] It concluded that although Rippey had made some allegations that, "if taken as true,

---

[4] (Quoting UTAH CODE § 78B-9-109(1), (2) (2011))

[5] *Rippey v. State*, 2014 UT App 240, ¶ 7, 337 P.3d 1071.

[6] *Id.* ¶ 10.

[7] *Id.* ¶ 9.

[8] *Id.*

[9] *Id.* ¶ 16.

arguably state one or more claims that his counsel performed deficiently in some respects," he had not made the necessary showing that it would have been rational for him to reject the plea deal.[10] Rippey asked this court to review the court of appeals' decision, but we declined to do so.

¶15  Ten years later, Rippey—again acting pro se—moved to reinstate the time to file a direct appeal in his criminal case. He attached to the motion a letter that he purportedly wrote to his trial counsel a few days after his sentencing. In the letter, Rippey instructed his counsel, "Appeal if possible."

¶16 The district court denied Rippey's motion. Rippey appealed, and the court of appeals summarily reversed the district court ruling because Rippey was not represented by counsel in bringing the motion. On remand, this time with Rippey represented by counsel, the district court granted Rippey's motion.

¶17  Upon reinstatement of his time for appeal, Rippey timely filed a notice of appeal. In this first direct appeal, Rippey claims that the PWS is unconstitutional, his plea was not knowingly and voluntarily entered, and the district court abused its discretion at sentencing.

¶18  We instructed the parties to brief only the threshold issue of whether the PWS is constitutional.[11] We now address that issue.

---

[10] *Id.* ¶¶ 13–15.

[11] Initially, we poured over Rippey's appeal and several similar cases for our court of appeals' consideration. As part of the suggestion leading to our recall of these cases, Rippey proposed that we "bifurcate the constitutionality of the Plea Withdrawal Statute from the underlying merits of each case," and we have done so. Upon resolution of that threshold issue, those other cases raising the same threshold issue are to "be poured back over to the court of appeals for consideration of the merits in each case." However, because we have held oral argument in Rippey's case, we will not pour his case back to the court of appeals but will resolve the remaining merits of his appeal after further briefing. *See* UTAH R. APP. P. 42(a) (allowing for the transfer of "cases," not discrete issues, and providing that "[a]t any time before a case is set for oral argument before the Supreme Court, the Court may transfer to the Court of Appeals any case except those cases within the Supreme Court's exclusive jurisdiction").

## ANALYSIS

¶19   Rippey contends that the PWS is unconstitutional on its face and as applied to him. He argues it is facially unconstitutional because subsection (2)(b) of the PWS violates the separation-of-powers principles enshrined in article VIII, section 4 of the Utah Constitution. As applied to him, Rippey argues subsections (2)(b) and (2)(c), working in tandem, violate his federal constitutional rights to appeal, to the effective assistance of trial counsel, to the effective assistance of state-paid counsel and defense resources on appeal, to due process of law, and to equal protection. He also argues that the statute violates his Utah constitutional open courts and uniform operation of laws rights.

¶20   Subsections (2)(b) and (2)(c) of the PWS read:

> (b) A request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is announced. Sentence may not be announced unless the motion is denied. For a plea held in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest.

> (c) Any challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under Title 78B, Chapter 9, Postconviction Remedies Act, and Rule 65C, Utah Rules of Civil Procedure.[12]

These subsections require a defendant seeking to withdraw a guilty plea to do so by motion before sentencing. A defendant who seeks to withdraw a guilty plea after sentencing can raise the issue only in a petition filed under the PCRA.

¶21   First, we review the separation-of-powers principles that apply to the PWS. Next, we apply those principles and conclude that the preservation and waiver rules contained in subsections (2)(b) and (2)(c) are procedural. And we clarify that these subsections inappropriately regulate the judiciary's issue-specific jurisdiction. Last, we determine whether the procedural component of the PWS is inextricably intertwined with its substance. Concluding that the procedural component is extractable, we hold that the legislature unconstitutionally created

---

[12] UTAH CODE § 77-13-6(2)(b) to (2)(c).

a procedural rule when it enacted subsection (2)(b) and the related waiver contained in subsection (2)(c) of the statute. In light of that holding, we decline to address Rippey's remaining constitutional challenges to the PWS.

I. THE UTAH CONSTITUTION EMPOWERS THE LEGISLATURE TO ENACT SUBSTANTIVE LAWS AND THE JUDICIARY TO ADOPT PROCEDURAL RULES

¶22 We begin by discussing the principles that guide a separation-of-powers analysis and how those principles apply to the PWS. The Utah Constitution declares that the "powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial."[13] This division means that each branch of government has powers reserved to it, but also that each branch's exercise of its powers is checked and balanced by the powers of the other two branches.

¶23 Relevant here, the Utah Constitution designates to the legislature the power to enact substantive laws.[14] Substantive laws are laws that create, destroy, or alter "the rights and duties of . . . parties and which may give rise to a cause [of] action."[15] But the Utah Constitution designates to the judiciary the power to adopt rules to govern procedure in Utah courts.[16] Procedural rules prescribe the "practice and procedure or the legal machinery by which the substantive law is . . . made effective."[17] While the legislature cannot independently create procedural rules,[18] it can by agreement of a super-majority of legislators amend the rules of procedure the judiciary has adopted.[19]

---

[13] UTAH CONST. art. V, § 1.

[14] *See id.* art. VI, § 1.

[15] *Petty v. Clark*, 192 P.2d 589, 593 (Utah 1948).

[16] UTAH CONST. art. VIII, § 4.

[17] *Petty*, 192 P.2d at 594.

[18] *Brown v. Cox*, 2017 UT 3, ¶¶ 17, 20, 387 P.3d 1040 ("By the constitution's plain language, the Legislature does not adopt rules of procedure and evidence; it amends the rules the supreme court creates.").

[19] *Id.*; UTAH CONST. art. VIII, § 4 ("The Legislature may amend the Rules of Procedure and Evidence adopted by the Supreme

(continued . . .)

¶24   We address Rippey's challenge under this framework. The parties agree that in enacting the PWS, the legislature did not purport to amend an existing rule of procedure adopted by the judiciary. This means that, to comply with article VIII of the Utah Constitution, the PWS must be substantive: it must create, alter, or destroy rights.[20] If the PWS is instead procedural—that is, it governs the practice and procedure that make substantive laws effective—it violates the Utah Constitution.[21]

## II. SUBSECTION (2)(b) OF THE PLEA WITHDRAWAL STATUTE IS PROCEDURAL

¶25   With this separation-of-powers framework in mind, we now address Rippey's argument that subsection (2)(b) of the PWS is procedural. Rippey's position is straightforward: subsection (2)(b) is procedural because this court said it is. And Rippey is right. In *State v. Rettig*, we reasoned that subsection (2)(b) is "quintessentially procedural" because it "prescribes the manner and means of raising a particular issue in court proceedings."[22]

¶26 Subsection (2)(b)'s text supports *Rettig*'s conclusion. Subsection (2)(b) states that "[a] request to withdraw a plea of guilty or no contest, except for a plea held in abeyance, shall be made by motion before sentence is announced."[23] "For a plea held in abeyance, a motion to withdraw the plea shall be made within 30 days of pleading guilty or no contest."[24] And, the "[s]entence may not be announced unless the motion [to withdraw the guilty plea] is denied."[25] These statutory requirements amount to little more than deadlines for a defendant to file a motion to withdraw, and as *Rettig* pointed out, "[y]ou can't get much more procedural than a filing deadline."[26]

---

Court upon a vote of two-thirds of all members of both houses of the Legislature.").

[20] *See Petty*, 192 P.2d at 593.

[21] *See id.* at 594; *Brown*, 2017 UT 3, ¶¶ 17, 20.

[22] 2017 UT 83, ¶ 58, 416 P.3d 520.

[23] UTAH CODE § 77-13-6(2)(b).

[24] *Id.*

[25] *Id.*

[26] *Rettig*, 2017 UT 83, ¶ 58.

¶27 The State urges us to reconsider our reasoning in *Rettig* and argues that subsection (2)(b) is substantive because it bars a defendant from raising an unpreserved challenge to the validity of his plea on direct appeal, thus extinguishing his substantive right to vacate his sentence based on the allegedly invalid plea.[27] We disagree.

¶28 Like other rules of preservation, subsection (2)(b) does not create or extinguish legal rights, but instead controls the legal machinery by which those rights operate. Subsection (2)(b) establishes the method for withdrawing a guilty plea and the deadline for doing so.[28] And subsection (2)(c) prevents defendants who miss (2)(b)'s withdrawal deadline from challenging their plea on direct appeal—a waiver sanction that naturally flows from (2)(b)'s preservation rule.[29]

### III. SUBSECTION (2)(b) OF THE PLEA WITHDRAWAL STATUTE DOES NOT REGULATE SUBJECT MATTER JURISDICTION

¶29 Having confirmed that subsection (2)(b) of the PWS is procedural, we now address the State's alternative argument that "[r]egardless of whether the time limit in the [PWS] is procedural or substantive, it is jurisdictional and thus within the legislature's purview." Specifically, the State contends that "when the legislature enacts a statute that has the effect of cutting off a court's authority to reach an issue, that is a valid exercise of the legislature's authority to regulate jurisdiction no matter if the statute may be considered procedural." This argument lumps together distinct types of "jurisdiction." And the distinction matters, because not all types of jurisdiction fall under the legislature's authority to regulate.

---

[27] The State also suggests that subsection (2)(b) is substantive because, in the retroactivity context, this court has recognized the provision as such. But "the fact that a statute is sufficiently 'substantive' to bar its retroactive application doesn't tell us anything meaningful about whether it is 'substantive' under article VIII, section 4." *Id.* ¶ 56 n.11.

[28] *See id.* ¶ 58.

[29] *Id.* ¶ 47. We discuss subsection (2)(c)'s waiver component below. *See infra* ¶¶ 34–39.

¶30　In *Rettig*, we stated that "[t]he notion of 'jurisdiction' is a slippery one."[30] It is a "word that means different things in different circumstances."[31] And we have, at times, used "the hazy term 'jurisdiction' without any classification or definition."[32] Two distinct types of jurisdiction are relevant to this case.

¶31　The first type is subject matter jurisdiction. We have referred to this type of jurisdiction in part as the "statutory limits on the class of cases assigned to the authority of a certain court."[33] Article VIII, section 3 of the Utah Constitution gives the legislature the authority to set certain limits on this type of jurisdiction, and the legislature's exercise of that power does not infringe on the judiciary's authority to adopt rules of procedure.[34]

¶32　The second relevant type of jurisdiction is the judiciary's issue-specific jurisdiction. This is "the more limited notion" of a court's "power to reach a certain question presented."[35] We noted in *Rettig* that we have authority to enact "commonplace" procedural rules, including rules of preservation and waiver.[36] These rules "create a jurisdictional bar . . . in the sense that they foreclose the power of the court to consider issues not properly preserved and barred by a principle of waiver."[37] The Utah Constitution "indicate[s] that this sort of jurisdictional bar is a matter within our power to regulate by the promulgation of a rule of procedure."[38] And though distinct from subject matter jurisdiction, "the effect of this kind of rule is properly viewed as

---

[30] 2017 UT 83, ¶ 36, 416 P.3d 520 (cleaned up).

[31] *Id.* (cleaned up).

[32] *Id.* ¶ 65 (Durham, J., concurring in the result); *see, e.g.*, *Granite Sch. Dist. v. Young*, 2023 UT 21, ¶¶ 30–32, 537 P.3d 225.

[33] *In re Adoption of B.B.*, 2017 UT 59, ¶¶ 121, 129, 417 P.3d 1 (Lee, A.C.J., opinion of the court in part).

[34] *See also Rettig,* 2017 UT 83, ¶ 37.

[35] *Id.* ¶ 39.

[36] *Id.* ¶ 17 ("Rules of [preservation and waiver] are commonplace." (cleaned up)).

[37] *Id.* ¶ 35 (cleaned up).

[38] *Id.* ¶ 38.

'jurisdictional' in the narrow sense of regulating the scope of a court's authority to address a certain issue."[39]

¶33 Many of our cases analyzing the PWS describe subsection (2)(b) as imposing "a jurisdictional bar on late-filed motions to withdraw guilty pleas."[40] The State is correct to note that (2)(b), in creating a rule of preservation, has jurisdictional effect. But, as we made clear in *Rettig*, the jurisdiction it regulates is the limited kind that we control through rules of procedure, not the subject matter jurisdiction that the legislature controls through statute.[41] And because (2)(b)—an otherwise procedural rule—does not implicate subject matter jurisdiction, the legislature lacks authority to impose it.

## IV. SUBSECTION (2)(c) OF THE PLEA WITHDRAWAL STATUTE INCLUDES BOTH A SUBSTANTIVE RIGHT AND A PROCEDURAL RULE

¶34 Having established that subsection (2)(b) of the PWS is procedural, we now consider whether subsection (2)(c) also contains a procedural rule. Rippey directs his separation-of-powers challenge only at subsection (2)(b) of the PWS. And under normal

---

[39] *Id.*

[40] *Grimmett v. State*, 2007 UT 11, ¶ 8, 152 P.3d 306 ("[Subsection (2)(b)] establishes the filing limitations that govern a criminal defendant's right to withdraw a guilty plea. These filing limitations are jurisdictional."); *see State v.* Merrill, 2005 UT 34, ¶ 17, 114 P.3d 585; *State v. Allgier*, 2017 UT 84, ¶ 21, 416 P.3d 546 ("[O]ur precedent that the [PWS] imposes a jurisdictional bar is well established.").

[41] The State suggests that *Rettig* ignored earlier cases that reached a contrary conclusion, among them *State v. Larsen*, 850 P.2d 1264 (Utah 1993), and *City of Monticello v. Christensen*, 788 P.2d 513 (Utah 1990). But these cases speak to different issues than the one before us. In *Larsen*, we analyzed the language "as prescribed by law" to determine whether the legislature intended a statute or procedural rule to govern a stay of a criminal sentence pending appeal. 850 P.2d at 1266–67. And in *Christensen*, we addressed whether a statute that allowed an appeal of a justice court ruling to proceed as a de novo trial in a district court comported with the constitutional appeal guarantee in the Utah Constitution. 788 P.2d 515–19. Neither case compels an answer to the question presented here, which is whether the legislature can control our issue-specific jurisdiction.

circumstances, we would confine our analysis to that subsection only. But Rippey's argument and the State's response also implicate the waiver contained in subsection (2)(c). And so we turn now to that waiver.

¶35 Subsection (2)(c) reads, "Any challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under" the PCRA.[42] *Rettig* is clear that subsection (2)(c) includes a substantive right: (2)(c) allows a defendant to raise unpreserved challenges to a guilty plea through the PCRA, and that established "a new legal remedy."[43] "The establishment of a new remedy is a core matter of substance—clearly within the power of the legislature."[44] Because neither party challenges *Rettig*'s holding on this point, we treat it as binding.

¶36 Although we held in *Rettig* that (2)(c) is substantive, our analysis of (2)(c) was incomplete. There, the appellant challenged only the constitutionality of subsection (2)(c), so we expressly declined to consider any challenge to (2)(b)—the preservation rule—or to consider whether the two provisions were inextricably intertwined.[45] At the same time, we intimated that, along with a substantive right, subsection (2)(c) also contains a procedural component: the companion "waiver" to (2)(b)'s preservation rule.[46] And we noted that the "procedural dimension of the preservation rule in the statute—the time deadline it sets for the filing of motions—may be a potent basis for questioning the constitutionality of this statute under article VIII, section 4."[47] We also held that ordinary rules of preservation and waiver do not foreclose any substantive right.[48] "They simply prescribe a sanction

---

[42] UTAH CODE § 77-13-6(2)(c).

[43] 2017 UT 83, ¶ 53, 416 P.3d 520.

[44] *Id.*

[45] *Id.* ¶¶ 59–60.

[46] *Id.* ¶ 47 (citing subsection (2)(c) and stating that the PWS "prescribes a strict waiver sanction that forecloses review for plain error on direct appeal").

[47] *Id.* ¶ 59 n.14.

[48] *Id.* ¶¶ 20–21 (discussing Rettig's right to appeal claim).

for the failure to satisfy the timing deadlines set forth in the rule," and "that effect is as wide-ranging as it is commonplace."[49]

¶37 Rippey today brings that forecasted challenge to subsection (2)(b). And we now determine that subsections (2)(b) and (2)(c) together create a rule of preservation and waiver, with subsection (2)(c) containing the waiver. It does so by making explicit reference to the rule of preservation created by subsection (2)(b): "[a]ny challenge to a guilty plea not made within the time period specified in Subsection (2)(b) shall be pursued under" the PCRA.[50]

¶38 We have already concluded that subsection (2)(b) is procedural, and accordingly must be stricken from the text of the PWS. But because subsection (2)(c) relies on (2)(b)'s procedural mechanism, removing (2)(b) leaves (2)(c)'s waiver untethered. Without being able to reference "the time period specified in Subsection (2)(b)," (2)(c) contains an inactionable command. And without a defined time period, *no* defendant could be subject to the waiver rule or required to pursue their challenge to their plea through the PCRA. We thus conclude that we cannot fully address Rippey's challenge to subsection (2)(b) without addressing (2)(c) as well.

¶39 To the extent subsection (2)(c) allows defendants to challenge their plea under the PCRA, that is a clear substantive right. But to the extent (2)(c) embeds a sanction for not meeting the requirements of (2)(b), that portion is procedural and beyond the power of the legislature to enact.

V. THE PROCEDURAL RULES OF SUBSECTIONS (2)(b) AND (2)(c) ARE
   NOT INEXTRICABLY INTERTWINED WITH SUBSECTION (2)(c)'S
   SUBSTANTIVE RIGHT

¶40 Having established that the PWS contains unconstitutional procedural rules of preservation and waiver, we now analyze whether we must still uphold those rules because they are inextricably intertwined with the substantive law of the PWS. In *Rettig*, we did "not need to reach whether subsections (2)(b) and (2)(c) are 'inextricably intertwined' in a manner insulating the broader statutory scheme from challenge (even if one of these provisions is procedural)" because the appellant did not challenge

---

[49] *Id.* ¶ 21.

[50] UTAH CODE § 77-13-6(2)(c).

subsection (2)(b).[51] With subsection (2)(b) on the table, we now undertake the inextricably intertwined analysis.

¶41 We have previously held that a procedural provision in a statute does not violate separation-of-powers principles when it is attached to a substantive right and "cannot be stripped away without leaving the right or duty created meaningless."[52] Said another way, "a procedural rule may be so intertwined with a substantive right that the court must view it as substantive."[53] The State argues that we should view the procedural parts of subsections (2)(b) and (2)(c) as inextricably intertwined with their substance because "the exclusive nature of [the PCRA] remedy comes into play only in conjunction with" and "is superfluous" without the time limits of subsection (2)(b).

¶42 The State points to our analysis in *Drej* as supportive of its position that we cannot untangle the substance and procedure of the PWS, but our reasoning in *Drej* is distinguishable.[54] In *Drej*, we considered whether the special mitigation statute complied with the separation-of-powers provisions of article VIII.[55] The statute at issue allowed criminal defendants to raise the affirmative defense of special mitigation.[56] The parties in *Drej* did not argue that the creation of the special mitigation defense was procedural.[57] Nor could they have; the "statute plainly creates and defines the right to present special mitigation to a jury," and therefore is substantive.[58]

¶43 The issue instead was what burden of proof the special mitigation statute required a defendant to meet to successfully invoke that defense.[59] We noted that whether a statute that assigned a burden of proof was procedural or substantive was a

---

[51] 2017 UT 83, ¶ 60, 416 P.3d 520.

[52] *State v. Drej*, 2010 UT 35, ¶ 31, 233 P.3d 476.

[53] *Id.* ¶ 30.

[54] *See id.*

[55] *See id.* ¶¶ 25–31.

[56] *See* UTAH CODE § 76-5-205.5.

[57] *Drej*, 2010 UT 35, ¶ 11.

[58] *Id.* ¶ 28.

[59] *See id.* ¶ 11.

question of first impression and that other state courts were split on the issue.[60] But we found guidance in the approach that the U.S. Supreme Court took in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.* when addressing the same issue.[61] There, the Court concluded that assigning a burden of proof was procedural, in that it "affect[ed] the exercise of judicial power."[62] But the Court reasoned that "[p]rovisions that create presumptions, or assign burdens of proof, or prescribe remedies . . . are also incidental to Congress'[s] power to define the right that it has created."[63] Applying that reasoning in *Drej*, we held the burden of proof was so intertwined with the substantive right to present mitigation that the court had to view it as substantive.[64]

¶44 The State claims that our reasoning from *Drej* applies here. Specifically, it argues that subsections (2)(b) and (2)(c) are inextricably intertwined because "the exclusive nature of [subsection (2)(c)'s PCRA] remedy comes into play only in conjunction with the time limits of subsection (2)(b)." And because stripping away the procedure created by (2)(b) would render the substantive right created by (2)(c) meaningless, we must treat that procedural subsection as substantive.[65]

¶45 But the scenario we faced in *Drej* is not what we face today. In *Drej*, the legislature created a statute that was overwhelmingly substantive aside from a small procedural component. Here, the legislature has enacted a statute that is, at its core, a procedural rule. Subsections (2)(b) and (2)(c) of the PWS are fundamentally a rule of

---

[60] *Id.* ¶ 29.

[61] *Id.* ¶¶ 30–31 (discussing *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982), *superseded by statute as recognized in Things Remembered, Inc. v. Petrarca*, 516 U.S. 124, 132 n.2 (1995) (Ginsburg, J., concurring)).

[62] *Marathon Pipe Line Co.*, 458 U.S. at 83.

[63] *Drej*, 2010 UT 35, ¶ 30 (cleaned up) (citing *Marathon Pipe Line Co.*, 458 U.S. at 83).

[64] *Id.* ¶ 31.

[65] While we leave *Rettig*'s holding untouched, we note it is dubious whether subsection (2)(c) created a substantive right to challenge a plea that did not already exist under the PCRA.

preservation and waiver. And as we held in *Rettig* and affirm with our analysis above, that rule is fundamentally procedural.[66]

¶46   Our primary concern when interpreting article VIII is to ensure that the branches of government, including the judiciary, exercise only the powers that the Utah Constitution appoints to them. In *Drej*, we held that it was appropriate to allow the legislature to "incidental[ly]" infringe upon the judiciary's authority to adopt procedural rules because that infringement was necessary for the legislature to define the right that it had created.[67] That logic does not apply when the balance between substantive law and procedural infringement tips in the other direction.

¶47   Accordingly, we reject the State's argument that our holding in *Drej* prevents us from excising the procedural portions of subsection (2) of the PWS from the substantive ones. Because subsection (2)(b) is procedural, we strike it down as an unconstitutional infringement on this court's authority to adopt rules of procedure. And while we abide by *Rettig*'s conclusion that subsection (2)(c) creates a substantive right to challenge a guilty plea under the PCRA, for the reasons articulated above, we hold that its procedural component lacks legal effect once subsection (2)(b) is removed. Thus, when shorn of its procedural content by our decision today, subsection (2)(c) simply allows any challenge to a guilty plea to be pursued under the PCRA.

## VI. THE STANDARD RULES OF PRESERVATION APPLY TO PLEA WITHDRAWAL

¶48   Having stricken subsection (2)(b) and the corresponding waiver rule embedded in subsection (2)(c) of the PWS, we next address how plea withdrawal works in the absence of these procedural rules.[68] We hold that without subsection (2)'s special rule of preservation and waiver, our normal rules of preservation and waiver apply. Under those rules, "[a]n issue is preserved for appeal when it has been presented to the district court in such a

---

[66] 2017 UT 83, ¶ 58.

[67] 2010 UT 35, ¶¶ 30–31 (cleaned up).

[68] Because the withdrawal of a not-guilty plea is governed by subsection (1), this decision does not affect that subsection. *See* UTAH CODE § 77-13-6(1).

way that the court has an opportunity to rule on it."[69] If a party "fails to raise and argue an issue in the [district] court, it has failed to preserve the issue, and an appellate court will not typically reach that issue absent a valid exception to preservation."[70]

¶49 In practice, this means that whether a defendant may challenge a guilty plea on direct appeal will depend on whether he attempted to withdraw that plea in the district court in a way that the district court had the opportunity to rule on it. If the defendant does, then the issue of the plea's validity is preserved and may be argued on direct appeal. If the defendant does not preserve the issue of the plea's validity, then to challenge that plea on direct appeal the defendant will need to show that an exception to preservation applies.[71]

¶50 Moving forward, this case is governed by those same rules. In an order issued alongside this decision, we ask the parties to brief the merits of Rippey's challenges to his plea, conviction, or sentence under the standards articulated in this opinion.[72]

## CONCLUSION

¶51 Rippey challenges the constitutionality of the PWS. We hold that subsection (2)(b) and the waiver component of subsection (2)(c) of the PWS were unconstitutionally enacted in violation of article VIII, section 4 of the Utah Constitution. We keep this case to hear further argument on Rippey's challenges to his guilty plea, conviction, or sentence.

––––––––––––––

[69] *See Patterson v. Patterson*, 2011 UT 68, ¶ 12, 266 P.3d 828 (cleaned up).

[70] *State v. Johnson*, 2017 UT 76, ¶ 15, 416 P.3d 443; *see also id.* ¶¶ 20–24 (listing three exceptions to preservation: plain error, ineffective assistance of counsel, and exceptional circumstances).

[71] *See id.* ¶ 15.

[72] In another order issued alongside this decision, we lift the stay on the related cases. *See supra* ¶ 18 n.11. Pursuant to rule 42 of the Utah Rules of Appellate Procedure, we pour those cases back over to the court of appeals for further proceedings under the standards articulated in this opinion.