*This opinion is subject to revision before final publication in the Pacific Reporter*

**2025 UT 56**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

ERDA COMMUNITY ASSOCIATION, INC., TERRY MATHEWS,
KALEM SESSIONS, and RYAN SORENSEN,

*Appellants,*

*v.*

BRAYDEE BAUGH and LIEUTENANT GOVERNOR DEIDRE HENDERSON,
*Appellees.*

No. 20230804
Heard December 13, 2024
Filed November 20, 2025

On Direct Appeal

Third District Court, Tooele County
The Honorable Teresa L. Welch
No. 220301344

Attorneys:

Timothy C. Houpt, C. Michael Judd, Salt Lake City,
Janet M. Conway, Wanship, for appellants

Robert E. Mansfield, Megan E. Garrett, Salt Lake City, for appellee
Braydee Baugh

Derek E. Brown, Att'y Gen., Scott Cheney, Brook McCarrick,
Lance Sorenson, David N. Wolf, Asst. Att'ys Gen., Salt Lake City,
for appellee Lieutenant Governor Deidre Henderson

JUSTICE HAGEN authored the opinion of the Court, in which
ASSOCIATE CHIEF JUSTICE PEARCE, JUSTICE PETERSEN,
JUSTICE POHLMAN, and JUDGE BEAN joined.

Having recused himself, CHIEF JUSTICE DURRANT does not
participate herein; DISTRICT COURT JUDGE JOSEPH M. BEAN sat.

JUSTICE HAGEN, opinion of the Court:

## INTRODUCTION

¶1    The sponsors who led the campaign to incorporate the City of Erda want to keep the young city's boundaries intact. In this case, they hope to prevent nearly 8,000 acres from being annexed out of Erda and into Grantsville City.

¶2    When the attempted annexation neared completion, the sponsors petitioned the district court for extraordinary relief pursuant to rule 65B of the Utah Rules of Civil Procedure. Specifically, they asked the court to invalidate Grantsville's annexation ordinance and prevent the Lieutenant Governor from certifying the annexation based on alleged statutory and constitutional violations.

¶3    The district court dismissed the case, concluding among other things that the sponsors need but lack statutory standing.

¶4    We affirm, but on other grounds. The sponsors pursue both statutory and constitutional claims under rule 65B. Their statutory claims seek review of whether Grantsville's City Recorder correctly determined that the annexation petition complied with statutory requirements. The sponsors concede that they do not have so-called "statutory standing" to bring these claims because they do not fall within the class of parties that the legislature has authorized to sue to enforce the statute. Instead, they seek to invoke the district court's constitutional writ authority reflected in rule 65B(d)(2)(B), which provides relief where a "person has failed to perform an act required by law as a duty of office, trust or station." They have not persuaded us that rule 65B(d)(2)(B) applies where the public official has performed the act, but has allegedly done so incorrectly, nor have they attempted to show that the relief they seek is otherwise within the judiciary's constitutional writ authority.

¶5    As for the constitutional claims, the sponsors cannot obtain relief under rule 65B because that rule offers relief only "[w]here no other plain, speedy and adequate remedy is available." As recent decisions from this court and the court of appeals make clear, the sponsors may seek adjudication of their constitutional claims despite lacking statutory standing.

## BACKGROUND

¶6 This dispute revolves around a pair of connected events: the incorporation of the City of Erda, and an endeavor to annex property into Grantsville City. The appellants, whom we refer to as the sponsors, supported Erda's incorporation and now challenge the annexation.

¶7 In late 2018, the sponsors began the process of incorporating Erda. Their professed goal was to "stop the onslaught of high-density development projects" by preserving the area's "existing agricultural and rural zoning." Erda's incorporation took effect just over three years later, after a feasibility study confirmed the proposed city's viability, a successful election approved the incorporation, and the Lieutenant Governor certified it.[1]

¶8 But while Erda's incorporation was still underway, efforts had begun to annex property from inside the proposed city's boundaries. On August 4, 2020—after the Lieutenant Governor approved the incorporation ballot measure but before the citizens voted on it—an entity called Six Mile Ranch filed a notice of intent to annex roughly 5,900 acres into Grantsville City. In November 2021—after the citizens voted to approve Erda's incorporation but before the Lieutenant Governor certified it—Six Mile Ranch submitted an annexation petition, which it then amended the next month.

¶9 When Erda's incorporation entered its final stages, Grantsville's City Recorder reviewed and certified Six Mile Ranch's annexation petition. And about nine months after Erda's incorporation took effect, Grantsville approved the annexation by ordinance. Along with the ordinance, Grantsville entered into a master development agreement to rezone the area for industrial, commercial, and high-density residential use.

¶10 Both before and after the annexation got off the ground, Utah's annexation code was in flux. In late March 2020, it prohibited filing an annexation petition for an area within a pending incorporation that had been approved for a feasibility study. UTAH CODE § 10-2-403(5) (Mar. 24, 2020). But in June 2020, the annexation code changed to create a window during which a

---

[1] For a more complete description of Erda's incorporation, see *Bleazard v. City of Erda*, 2024 UT 17, ¶¶ 14–19, 552 P.3d 183.

petition to annex such an area could be filed in non-first-class counties like Tooele County, so long as the notice of intent to file an annexation petition was filed "on or before August 5, 2020." *Id.* § 10-2-403(5)(c)(i) (June 29, 2020). Six Mile Ranch filed its notice of intent on August 4, 2020—one day before the window for filing such notices closed. In March 2021, the annexation code changed again to prohibit annexation of an area proposed for incorporation if certain conditions were met. *Id.* § 10-2-402(8)(a) (Mar. 16, 2021).

¶11 After the Grantsville City Recorder certified the annexation, but before the Lieutenant Governor did so, the sponsors filed a petition for extraordinary relief in the district court under rule 65B of the Utah Rules of Civil Procedure, naming the City Recorder and the Lieutenant Governor as respondents. Rule 65B offers relief "[w]here no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a). When they filed the petition, the sponsors claimed not to have another remedy because in two similar cases, the district court dismissed their declaratory judgment actions for lack of statutory standing.[2]

¶12 The sponsors allege that the annexation violated statutory requirements and that a provision of the annexation code is unconstitutional. In their statutory challenges, they assert that Six Mile Ranch's annexation petition lacked written permission from certain landowners, violating Utah Code section 10-2-403(3), and included more property than was listed in the previously filed notice of intent, violating Utah Code section 10-2-403(5)(c). In their constitutional challenges, they assert that the June 2020 annexation code provision allowing annexation of an area proposed for incorporation is unconstitutional, both as applied and on its face. Based on these purported statutory and constitutional violations, the sponsors seek to compel Grantsville's repeal of its annexation ordinance and to prevent the Lieutenant Governor's certification of the annexation.

¶13 The City Recorder moved to dismiss the petition, asserting that the sponsors, as challengers of the annexation, qualify as

---

[2] As we explain in more detail below, *infra* ¶¶ 43–48, the sponsors appealed the decisions in those two cases. The court of appeals reversed each dismissal in part, remanding the cases for further proceedings. *See Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 126, ¶ 61, 558 P.3d 91; *Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 161, ¶ 29, 560 P.3d 825.

statutory claimants and must meet the requirements for statutory standing—a burden they had failed to satisfy. (Citing *McKitrick v. Gibson*, 2021 UT 48, ¶ 2, 496 P.3d 147.) And in any event, the City Recorder added, the sponsors had not shown either traditional or alternative standing.[3]

¶14 The sponsors responded that while the City Recorder's argument about statutory standing might hold true in other situations, rule 65B is different and gives relief even when statutory standing is absent. According to the sponsors, they need only show traditional or alternative standing, which they argued they had done.

¶15 The district court also fielded motions from the sponsors and the Lieutenant Governor. The sponsors moved to amend their petition to add a claim against Grantsville City, and the Lieutenant Governor moved for a declaration about how the changes to the annexation code affected the annexation.

¶16 On all these motions, the district court ruled in favor of the City Recorder. The court granted the City Recorder's motion to dismiss, concluding that the claims were barred because the sponsors lack statutory, traditional, and alternative standing. Given its standing decision, the court denied the sponsors' motion to amend the petition—concluding that the proposed amendment would be futile—as well as the Lieutenant Governor's motion for a judicial declaration—concluding that the declaration would be an impermissible advisory opinion.

¶17 This appeal followed.

## ANALYSIS

¶18 The sponsors petitioned the district court for extraordinary relief under rule 65B of the Utah Rules of Civil Procedure. Rule 65B allows a petition for extraordinary relief only when "no other plain, speedy and adequate remedy is available."

---

[3] "[T]raditional standing requires a claimant to show injury, causation, and redressability." *Erda Cmty. Ass'n*, 2024 UT App 126, ¶ 23. Alternative standing permits the court to "grant standing where matters of great public interest and societal impact are concerned." *Gregory v. Shurtleff*, 2013 UT 18, ¶ 12, 299 P.3d 1098 (cleaned up).

UTAH R. CIV. P. 65B(a). In other words, if another remedy is available, then rule 65B is not.

¶19  The sponsors' petition includes two types of legal claims: statutory and constitutional. The statutory claims allege that the annexation petition violates statutory requirements because it "(1) does not contain [certain] owners[*] written permission, as required by Utah Code [section] 10-2-403(3)," and "(2) includes well in excess of property contained in the Six Mile notice of intent, in violation of Utah Code [section] 10-2-403(5)(c)." The constitutional claims allege that the statute allowing annexation of areas proposed for incorporation—the version of Utah Code section 10-2-403(5) enacted June 29, 2020—is unconstitutional to the extent it allows an annexation petition "to be submitted after [a] petition for incorporation is pending on the ballot." According to the sponsors, this statute must either be construed to avoid that interpretation or be declared unconstitutional under article I, section 7 and article VI, section 1 of the Utah Constitution.

¶20  The district court dismissed the petition, ruling that the sponsors lack standing. We affirm on the alternative ground that the sponsors have not shown an entitlement to relief under rule 65B.

¶21  As for the statutory claims, we conclude that because the sponsors do not have statutory standing, they indeed have no other remedy available to them. We then turn to whether the sponsors can seek an extraordinary writ pursuant to rule 65B(d)(2)(B) in the absence of statutory standing. Rule 65B(d)(2)(B) applies where a "person has failed to perform an act required by law as a duty of office, trust or station." We conclude that the sponsors have not shown that the rule applies where, as here, the public official has performed the required act but has allegedly done so incorrectly. And they have not attempted to show that the relief they seek is nonetheless within the scope of the judiciary's constitutional writ authority.

¶22  As for the constitutional claims, we conclude that there is another "plain, speedy and adequate remedy" available. Specifically, the sponsors can seek relief through a declaratory judgment action. Because the sponsors' path to another remedy is open, the path to relief under rule 65B is closed.

I.  WE AFFIRM THE DISMISSAL OF THE SPONSORS' STATUTORY CLAIMS

¶23 The sponsors concede that their challenges to the annexation petition would ordinarily require them to have statutory standing. And they do not claim to have statutory standing to bring those challenges. Because they do not have statutory standing, they reason that they have no other adequate remedy, and thus they can present their challenges to the court through a petition for extraordinary relief under rule 65B.

¶24 We agree that, due to their lack of statutory standing, the sponsors do not have another remedy. But the sponsors have not convinced us that they can invoke the judiciary's writ powers to avoid the limits set by the legislature on who can sue to enforce the legislature's own statutory requirements.

A.  *The Sponsors Have No Other Remedy for Their Statutory Claims Because They Do Not Have Statutory Standing*

¶25 The concept of statutory standing is built around the idea that when "the legislature creates statutory requirements," it may "designate, as it sees fit, how those requirements are to be enforced." *Bleazard v. City of Erda*, 2024 UT 17, ¶ 42, 552 P.3d 183 (cleaned up). In line with this principle, we treat statutory claims differently from other types of claims. As its label suggests, a statutory claim springs from statute, either because a statute offers the desired relief, or because the party bringing the claim alleges that a statute was violated. *See McKitrick v. Gibson*, 2021 UT 48, ¶ 18, 496 P.3d 147 ("[Appellant] is a statutory claimant, relying on provisions of GRAMA to seek judicial review . . . ."); *Bleazard*, 2024 UT 17, ¶ 41 (requiring statutory standing where plaintiffs' "suit [was] based entirely on the defendants' alleged noncompliance with the incorporation code"). A claim is not statutory, and thus statutory standing is not required, if the party's grievance is anchored in a non-statutory source, such as common law or the constitution. *See Bleazard*, 2024 UT 17, ¶ 3; *accord Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 126, ¶ 32, 558 P.3d 91.

¶26 For statutory claims, "statutory standing is mandatory." *Bleazard*, 2024 UT 17, ¶ 43 (quoting *McKitrick*, 2021 UT 48, ¶ 48). In other words, parties bringing statutory claims must show that "they fall within the class of parties that the legislature authorized to file suit." *Id.* ¶ 37 (cleaned up). The most common way statutory claimants make this showing is by pointing to a relevant statutory provision in which the legislature expressly grants them the ability to bring suit (i.e., an "express . . . right of action"). *See id.* ¶ 44.

Statutory claimants may also point to a statutory provision in which the legislature clearly implied such an ability (i.e., an "implied right of action"), *see id.*, but "Utah courts have rarely, if ever, found a Utah statute to grant an implied private right of action," *Buckner v. Kennard*, 2004 UT 78, ¶ 43, 99 P.3d 842.

¶27  In addition to showing statutory standing, we have held that statutory claimants must also show either traditional or alternative standing. *Bleazard*, 2024 UT 17, ¶ 43; *McKitrick*, 2021 UT 48, ¶ 48; *see also Erda*, 2024 UT App 126, ¶ 26. Even if a plaintiff has traditional or alternative standing, that does not "excuse a lack of statutory standing where the [plaintiff] is a statutory claimant." *McKitrick*, 2021 UT 48, ¶ 48.

¶28  These principles apply not only when parties seek relief under the terms of a statute directly, but also when they seek to vindicate statutory violations through a declaratory judgment action. Among other requirements, a plaintiff seeking a declaratory judgment must have a "legally protectible interest in the controversy." *Summit County v. Town of Hideout*, 2024 UT 39, ¶ 33, 557 P.3d 574 (cleaned up). When a "declaratory judgment claim is rooted in statute, not the constitution or common law," this requirement is fulfilled only if the legislature has given the plaintiff "an express or implied statutory right of action." *Id.* ¶ 35. If not, the plaintiff has no "legally protectible interest" in the controversy and "may not proceed with their claim for declaratory relief." *Bleazard*, 2024 UT 17, ¶ 38.

¶29  Here, the sponsors do not claim to fall within the class of parties that the legislature authorized to sue to challenge the annexation. Indeed, they do not dispute the district court's determinations in related cases that they fall outside that class of parties. This means they do not have statutory standing to bring a statutory claim under the terms of the annexation code directly. It also means they do not have a legally protectible interest in the annexation under the Declaratory Judgment Act. We therefore agree with the sponsors that for their statutory claims, they have "no other plain, speedy and adequate remedy . . . available." UTAH R. CIV. P. 65B(a).

B. *The Sponsors Have Not Shown That the Relief They Seek Falls Within the Plain Language of Rule 65B(d)(2)(B) or Is Otherwise Within the Scope of the Judiciary's Constitutional Writ Authority*

¶30 Having determined that the sponsors are without another remedy for their statutory claims, we now turn to their argument that a party may use rule 65B to compel compliance with a statute when, as here, the party is not among those statutorily authorized to enforce the statute. The sponsors rely on the language in rule 65B(d)(2)(B) that provides, "Appropriate relief may be granted . . . where an inferior court, administrative agency, corporation or person has failed to perform an act required by law as a duty of office, trust or station." UTAH R. CIV. P. 65B(d)(2)(B). The sponsors argue that this language "create[s] a right of action" even when a party would otherwise lack statutory standing.

¶31 This court's rules of civil procedure do not create private rights of action. The Utah Constitution gives this court the power to "adopt rules of procedure and evidence to be used in the courts of the state." UTAH CONST. art. VIII, § 4. "Procedural rules prescribe the practice and procedure or the legal machinery by which the substantive law is made effective." *State v. Rippey*, 2024 UT 45, ¶ 23 (cleaned up). But the power to make substantive law is reserved to the legislature. *Id.* "Substantive laws are laws that create, destroy, or alter the rights and duties of parties and which may give rise to a cause of action." *Id.* (cleaned up).

¶32 Yet not all private rights of action are created by the legislature. A plaintiff may also assert a constitutional claim or a common law right of action. *See Bleazard*, 2024 UT 17, ¶ 41.

¶33 The ability to seek an extraordinary writ is rooted in the constitution. Although rule 65B does not create a right of action, it does reflect the judiciary's constitutional power to issue extraordinary writs—power that has existed since the Utah Constitution's adoption in 1895. *Patterson v. State*, 2021 UT 52, ¶¶ 77, 79, 504 P.3d 92. "Not long after statehood, we recognized that the Utah Constitution 'expressly conferred upon the courts and reserved unto them the power to issue the writs mentioned in the Constitution.'" *Id.* ¶ 81 (quoting *State v. Durand*, 104 P. 760, 764 (Utah 1908)). Today, the Utah Constitution endows this court with "original jurisdiction to issue all extraordinary writs." UTAH CONST. art. VIII, § 3. It likewise empowers district courts "to issue all extraordinary writs." *Id.* art. VIII, § 5.

¶34 Rule 65B is a procedural rule for managing the judiciary's constitutional writ authority. The rule "outlines the general mechanics of an extraordinary relief proceeding and designates the types of situations in which extraordinary relief may be attainable." *State v. Barrett*, 2005 UT 88, ¶ 8, 127 P.3d 682. Once the people of Utah constitutionalized the judiciary's writ authority and we adopted rule 65B, "the common law forms and pleadings for extraordinary writs" were "abolished." *Id.* ¶ 7 n.4 (cleaned up). But those developments "did not diminish the availability of extraordinary relief." *Id.* The rule remains "a repository of all the extraordinary writs that, in the past, were envisioned as separate and distinct proceedings." *Id.* ¶ 11. Thus, the remedies once provided by common law writs "remain available" through rule 65B. *Id.*

¶35 Subsection (d)(2) of rule 65B "is the equivalent of a common law petition for a writ of mandamus and provides the equivalent remedy." *Hogs R Us v. Town of Fairfield*, 2009 UT 21, ¶ 11, 207 P.3d 1221. Under the common law, the "writ of mandamus was designed to compel a person to perform a legal duty incumbent on him by virtue of his office or as required by law." *Renn v. Utah State Bd. of Pardons*, 904 P.2d 677, 682 (Utah 1995). Subsection (d)(2) describes four situations in which such a writ may be appropriate:

> (A) where an inferior court, administrative agency, or officer exercising judicial functions has exceeded its jurisdiction or abused its discretion; (B) where an inferior court, administrative agency, corporation or person has failed to perform an act required by law as a duty of office, trust or station; (C) where an inferior court, administrative agency, corporation or person has refused the petitioner the use or enjoyment of a right or office to which the petitioner is entitled; or (D) where the Board of Pardons and Parole has exceeded its jurisdiction or failed to perform an act required by constitutional or statutory law.

UTAH R. CIV. P. 65B(d)(2).

¶36 In their petition for extraordinary relief, the sponsors sought the relief described in subsection (d)(2)(B). But the City Recorder argues that relief under that subsection is limited to a writ compelling an official to perform a non-discretionary duty or "to direct the exercise of discretion[ary] action, but not to direct the

exercise of judgment or discretion in a particular way." (Quoting *State v. Stirba*, 972 P.2d 918, 921 (Utah Ct. App. 1998), *abrogated on other grounds by Barrett*, 2005 UT 88.) The City Recorder also argued that (d)(2)(B) could not be used to undo an action that had already been performed.

¶37 The sponsors assert that the City Recorder's argument that "this Court may not issue a writ to undo actions" is "contrary to a number of this Court's decisions including *Walker Bank*, 390 P.2d 592, where this Court did exactly that." But *Walker Bank* did not involve a petition for an extraordinary writ; it was before the court on a direct appeal from a declaratory judgment action. *See Walker Bank & Tr. Co. v. Taylor*, 390 P.2d 592, 593 (Utah 1964). The sponsors also included a string cite to five additional cases, but none of those cases involve a petition under rule 65B(d)(2)(B) either. *See Olson v. Salt Lake City Sch. Dist.*, 724 P.2d 960, 967 (Utah 1986) (direct appeal from a permanent injunction); *Cox v. Laycock*, 2015 UT 20, ¶ 20, 345 P.3d 690 (writ sought under subsection (d)(2)(A), which contemplates that a writ may issue where a court or quasi-judicial body has "abused its discretion" (cleaned up)); *Walker v. Weber County*, 973 P.2d 927, 929 (Utah 1998) (writ sought under subsection (c), which contemplates that a writ may issue where "a public official has 'unlawfully' exercised the authority of their office"), *abrogated on other grounds by Burr v. City of Orem*, 2013 UT 57, 311 P.3d 1035; *Gallivan v. Walker*, 2002 UT 89, ¶ 12, 54 P.3d 1069 (writ sought under Utah Code section 20A-7-207(4), which authorizes judicial review of the lieutenant governor's refusal to certify an initiative petition).

¶38 Nor have the sponsors engaged with the language of the rule they invoke. Rule 65B(d)(2)(B), by its plain terms, applies where a "person has failed to perform an act required by law as a duty of office, trust or station." But the sponsors do not seek a writ directing the City Recorder to perform her statutory duty, which is to determine whether the annexation petition met the statutory requirements and to certify or reject the petition accordingly.[4] *See* UTAH CODE § 10-2-405(2)–(3) (Mar. 16, 2021). She already performed those duties when she determined that the petition was sufficient and certified it. Instead, the sponsors allege that she

---

[4] The sponsors also seek a writ compelling the Lieutenant Governor to certify the measure for placement on the ballot, but unless the City Recorder is first ordered to approve the petition, there is nothing to certify.

misinterpreted or misapplied the statutory requirements, and they seek a writ compelling her to withdraw the certification and reject the petition. The sponsors have not demonstrated that subsection (d)(2)(B) applies not only when a recalcitrant official refuses to perform an act required by law, but also when the official has allegedly performed the act incorrectly.

¶39 Still, we have recognized that the judiciary's constitutional writ authority may well be broader than what is reflected in our rules. *See generally Patterson v. State*, 2021 UT 52, 504 P.3d 92. Because they have not demonstrated that the relief they seek falls within the plain terms of rule 65B(d)(2)(B), the sponsors needed to show that the writ authority enshrined in our constitution would permit such relief. Specifically, they needed to show that the judiciary's constitutional writ authority empowers courts to review whether a public official, charged with determining whether certain statutory requirements are met, correctly interpreted and applied those requirements, even though the legislature has chosen not to include petitioners within the class of persons authorized to enforce the statute.

¶40 The sponsors have not made that showing. It was incumbent upon the sponsors to address whether the relief they seek was available at common law when the people of Utah constitutionalized the judiciary's writ power in 1895 and whether "the people of Utah would have understood the term 'all extraordinary writs' to include" a writ compelling a public official to perform a duty in a particular way "when they inserted that phrase into the constitution" in 1984. *See id.* ¶ 131. But the sponsors have not "delved into the historical record to provide information on how the people of Utah would have understood the writ power at various times in our history," *id.* ¶ 69, nor have they "engaged with the original understanding of the constitutional language" adopted as part of article VIII in 1984, *id.* ¶ 73. In short, they have not given us the tools necessary to rule in their favor.

¶41 Once the City Recorder raised the scope of rule 65B(d)(2)(B) as an alternative ground for affirming the district court's ruling, the sponsors needed to convince us that the relief they seek either fell within the plain language of rule 65B(d)(2)(B) or that it was otherwise within the judiciary's constitutional writ authority. Our rules of appellate procedure require an argument to "explain, with reasoned analysis supported by citations to legal authority and the record, why the party should prevail on appeal."

UTAH R. APP. P. 24(a)(8). A "conclusory argument is not the type of 'reasoned analysis' that allows us to rule in a party's favor." *Pinder v. Duchesne Cnty. Sherriff*, 2020 UT 68, ¶ 50, 478 P.3d 610 (quoting UTAH R. APP. P. 24(a)(8)). "An appellant that fails to devote adequate attention to an issue is almost certainly going to fail to meet its burden of persuasion." *Bank of Am. v. Adamson*, 2017 UT 2, ¶ 13, 391 P.3d 196.

¶42   We do not foreclose the possibility that the judiciary's writ authority can be used in this manner. We simply hold that the sponsors have not carried their burden of persuasion in this case. On that basis, we affirm the district court's dismissal of their statutory claims.[5]

## II. WE AFFIRM THE DISMISSAL OF THE CONSTITUTIONAL CLAIMS BECAUSE A PLAIN, SPEEDY AND ADEQUATE REMEDY IS AVAILABLE

¶43   Turning now to the sponsors' constitutional claims, we consider whether another "plain, speedy and adequate remedy" exists for those claims. *See* UTAH R. CIV. P. 65B(a). Because we answer that question in the affirmative, we hold that the sponsors cannot proceed with their constitutional claims under rule 65B.

¶44   As mentioned, "statutory standing is mandatory for statutory claims." *Bleazard v. City of Erda*, 2024 UT 17, ¶ 43, 552 P.3d 183 (quoting *McKitrick v. Gibson*, 2021 UT 48, ¶ 48, 496 P.3d 147). But the same is not true for non-statutory claims, as we indicated in *Bleazard*. There, we held that certain landowners could not move forward with their claims challenging Erda's incorporation. *Id.* ¶ 57. In doing so, however, we emphasized that the landowners relied "only on the incorporation code itself" and did not hook their claims to any "common law right or constitutional provision." *Id.* ¶ 3. The rule we set out in that case was therefore limited to the following: "Plaintiffs who seek a declaration that statutorily created requirements have been violated—and who do not invoke legal rights protected elsewhere, such as in the common law or the

---

[5] The sponsors separately argue that "[i]f the annexation code's limitations abrogate [their] claims, it violates the Open Courts Doctrine." *See* UTAH CONST. art. I, § 11. The sponsors reason that if "the Legislature abrogated [their] common law right to challenge a municipality's compliance with governing statutes through extraordinary writs, it violates the Open Courts Doctrine." But the sponsors have not convinced us that the extraordinary writ they seek was available at common law.

constitution—must show that they have . . . 'statutory standing.'" *Id.* ¶ 37.

¶45 Here, the sponsors contend that they have no other remedy for their claims because in two other cases, the district court dismissed similar claims after concluding the annexation code does not authorize them to file suit. But since the time the sponsors filed the petition in this case, the court of appeals has reversed those rulings.

¶46 In *Erda Community Ass'n v. Grantsville City*, 2024 UT App 126, 558 P.3d 91, the appellants—including some of the sponsors here—sought to undo an annexation of property into Grantsville, as the sponsors seek to do in this case. *See id.* ¶¶ 1–2. Like the sponsors here, the appellants in *Erda* brought both statutory and constitutional claims. *Id.* ¶ 18. The constitutional claims there also challenge aspects of the annexation code and overlap with the constitutional claims here. *Id.* ¶¶ 47–48.

¶47 The court of appeals reversed the district court's dismissal of the constitutional claims. *Id.* ¶ 61. Based on this court's holding in *Bleazard*, the court of appeals explained that "statutory standing is a concept that applies only to claims that seek redress under a statute; it does not apply to other types of claims, including common-law claims and constitutional claims, and claimants who bring these other types of claims do not need to demonstrate statutory standing." *Id.* ¶ 32. The court went on to explain that "the traditional standing test—and not the statutory standing test—is applicable where a party raises a challenge to the constitutionality of a state statute." *Id.* ¶ 33. The court of appeals conducted the same analysis and reached the same result in the second case. *See generally Erda Cmty. Ass'n v. Grantsville City*, 2024 UT App 161, 560 P.3d 825. In both cases, the court of appeals remanded the constitutional claims to the district court for further proceedings. *Id.* ¶ 29; *Erda Cmty. Ass'n*, 2024 UT App 126, ¶ 60.

¶48 To the extent that the constitutional claims raised in this writ action are the same as those in the declaratory relief actions now pending in the district court, the sponsors have a "plain, speedy and adequate remedy" available. And to the extent that the claims differ, the sponsors have not shown why they could not pursue additional constitutional claims in the same manner. Because they have another remedy, they may not bring a petition for extraordinary relief. *See* UTAH R. CIV. P. 65B(a). We thus affirm

the dismissal of the petition on that basis without deciding whether the sponsors have traditional standing.

## CONCLUSION

¶49 The sponsors may not pursue extraordinary relief in this case under rule 65B. Because they lack statutory standing to directly challenge the City Recorder's interpretation and application of the annexation code, they sought a writ under rule 65B(d)(2)(B). But they have not persuaded us that rule 65B(d)(2)(B) applies or that the relief they seek is nevertheless within the judiciary's constitutional writ authority. They have also sought a writ to challenge the constitutionality of the annexation code. But because statutory standing is not required for constitutional claims, they have a plain, speedy and adequate remedy and are not entitled to relief under rule 65B. On these grounds, we affirm the dismissal of the sponsors' petition for extraordinary relief.

———————————